28 174
45 678
46 240

28 174
47 373

28 174
50 399

28 174
52 234

28 174
71 549

CAROLINE JEFFERS, *et al.*, v. W. H. FORBES, *et al.*

1. PARTIES, *Joinder of.* Under § 35 of the code, in order that parties may properly unite as plaintiffs, they should each have not only an interest in the subject of the action, but also in obtaining the relief demanded.

2. PARTIES, *Misjoinder of.* Where several parties who as tenants in common own a single tract of land, and by separate deeds, executed at different times and places, each purporting to convey only the interest of the grantor therein, convey the entire tract to a common vendee, only the grantor in each deed is interested in having such deed set aside, and is the proper plaintiff in an action therefor; and where all the tenants in common file a petition against the common vendee, praying that all the separate deeds be set aside and canceled, there is an improper joinder of several causes of action, and this notwithstanding the tenants in common all obtain their interests by inheritance from a common ancestor.

3. ———— A party seeking to set aside a contract or conveyance as fraudulent and void, must return or offer to return all that he has received as consideration for such contract or conveyance.

4. TITLE, *Not Transferred by Mere Surrender of Deed.* Where it appears that the defendant in an action to set aside a fraudulent contract or conveyance had, as consideration therefor, caused a deed to a tract of land to be executed by a third party and delivered to the plaintiff, a mere tender of such deed to the defendant is not equivalent to an offer to convey the land, for the title once vested in the plaintiff is not transferred by a mere surrender of the instrument which conveyed the title from the third party to him.

5. FRAUDULENT CONTRACT, *Must be Set Aside In Toto.* Where an action is brought to set aside a conveyance as fraudulent and void, and it appears that part of the consideration for such conveyance was a just and valid mortgage, the conveyance will be set aside only upon payment of the mortgage debt or a restoration of the mortgage to the extent that the debt remains unsatisfied. In other words, a fraudulent contract when set aside must be set aside *in toto*, and the parties restored to the condition they occupied before the contract was made.

6. MONEY, *When not Paid in Aid of a Fraud.* The money paid for the purchase of a just and valid mortgage upon real estate is not money paid to aid in the perpetration of a fraud to such an extent as to prevent the purchaser from receiving the amount of the mortgage, even though a subsequent purchase of the land from the owner be adjudged fraudulent and void.

*Error from Doniphan District Court.*

ACTION brought by *Jeffers* and thirteen others against *Forbes* and another, to set aside certain deeds. The nature of the action, and the facts, appear in the opinion. At the September Term, 1881, the court sustained a demurrer to plaintiffs' petition, to which ruling they excepted, and have brought the case here for review.

*M. Polk*, and *Webb & Martin*, for plaintiffs in error.

*A. Perry*, and *B. A. Seaver*, for defendants in error.

The opinion of the court was delivered by

BREWER, J.: The plaintiffs in error, plaintiffs below, were respectively the widow and children of A. R. Jeffers, deceased, and filed their petition in the district court of Doniphan county, seeking to set aside six several deeds executed by themselves separately to the defendant W. H. Forbes, and also a subsequent deed from W. H. Forbes to his co-defendant, B. N. Forbes.

The deeds from the plaintiffs were, respectively, a deed from the widow, four separate deeds from the adult children, and a guardian's deed from the widow as guardian for the minor children. These deeds were executed at different dates and places, and all taken together conveyed a full title to the land described therein. To the petition defendants demurred on the ground that several causes of action were improperly joined, and also that the petition did not state facts sufficient to constitute a cause of action. The demurrer was sustained, and plaintiffs now bring the question here for reëxamination. The facts as disclosed in the petition are briefly as follows: On October 1, 1875, A. R. Jeffers was the owner in fee simple of a tract of about 310 acres in Doniphan county, Kansas, and on that day he and his wife executed a mortgage to the Phœnix Insurance company to secure the payment of $3,300, with interest at 10 per cent. They also executed a second mortgage on the land to the defendant W. H. Forbes, for $428. In August, 1878,

A. R. Jeffers died intestate, his death being sudden and from accident, while away from home, leaving the plaintiffs as his heirs, and also leaving personal property more than enough to pay and discharge all debts against the estate, as well as all expenses of administration. Besides the above property, he was also the owner at the time of his death of an unimproved tract of forty acres in Doniphan county, worth $10 per acre. Interest had been paid on the insurance company's mortgage up to April 1, 1878. The mortgaged tract had been occupied by A. R. Jeffers and his family for several years as a homestead, and continued to be so occupied by the widow and younger children after his death until the 12th day of March, 1879, when by fraud, fraudulent representation, threats and duress on the part of the defendant W. H. Forbes, they were dispossessed by him. The mortgaged tract was worth at the time of the death of said A. R. Jeffers the sum of $12,380, and the annual profits were $1,500. This value continued up to the time of the execution of the deeds complained of, and was well known to the defendants. A few weeks after the death of said A. R. Jeffers, W. H. Forbes purchased the insurance company's mortgage, representing that he was doing so as a matter of friendship for the widow and children. After obtaining possession of this mortgage, the attitude of Forbes toward the family suddenly changed. He became hostile, and demanded immediate possession of the property so mortgaged, falsely representing that the indebtedness of the estate was many thousands of dollars more than it was two years after found to be, and that its aggregate was so great that no property, either real or personal, would be left to the widow or children. The widow being old and infirm, little versed in business matters, paralyzed, and overwhelmed with distress on account of her sudden bereavement, ignorant of her husband's real financial condition or of her rights under the law, being without means at that time to procure counsel of her own, and each and all of her children being young and unskilled in business, and fearing that defendant Forbes could and would proceed to dispossess the

plaintiff and her family, and under the duress and threats of said defendant Forbes, the widow and adult children conveyed by deeds of quitclaim their interest in the mortgaged tract, and the widow was persuaded to become guardian of the minor children, and to institute and carry through proceedings in the probate court by which the interests of said minor children were also conveyed to said Forbes — the sole consideration above the mortgage debts received by said grantors being a tract of forty acres, costing $350, which said Forbes caused to be conveyed to said widow.  The prayer of the petition was that all of said six deeds from the plaintiffs to W. H. Forbes, and that from W. H. Forbes to his brother, be canceled and declared void and of no effect; that the defendant be compelled to account for the use and occupation of the lands since March 12, 1879; and for such other and further relief as might be deemed just and equitable.

The first ground of demurrer, as heretofore stated, is that several causes of action were improperly joined; and the contention is, that the setting aside of each of the six several deeds from the plaintiffs to the defendant W. H. Forbes was a separate and independent cause of action, in which only the grantor in such deed had any interest.  On the other hand, it is insisted that the plaintiffs together were the owners of a single tract; that but a single contract and agreement was entered into between them and the defendant W. H. Forbes; that in pursuance of such single contract and agreement the various interests held by the several plaintiffs were conveyed to said Forbes; that if such contract and agreement was fraudulent and void, the plaintiffs had a joint interest in having it so adjudged, and all instruments executed to carry it into effect canceled and declared null and void; and that therefore there was but a single cause of action, in which all the parties plaintiff were interested, and to enforce which they may unite in a single action.

We think the contention of the defendants in error is correct, and that the ruling of the district court must be sustained on this ground.  Sec. 35 of the code prescribes the

12 — 28 KAS.

rule as to the joinder of parties plaintiff. It reads: "All persons having an interest in the subject of the action and in obtaining the relief demanded may be joined as plaintiffs, except as otherwise provided in this article." Now the title by which the plaintiffs held this tract was that of tenants in common. Each owned an individual interest, and his ownership was not affected in the slightest degree by the question as to who held the title of the other interests. Either owner might sell or refuse selling, and his right and title could not be abridged by any action of his co-tenants. Whatever may have been the wrong in the agreement, the transfer of title was effected only by these separate conveyances. The deed of the widow passed no title away from any of her children. That deed may stand or fall without in the least affecting any of the other conveyances. Suppose, for instance, an action was brought to set aside the widow's deed alone, can it be claimed for a moment that the children would be necessary or proper parties to such an action? Whatever the consideration received by the widow, whatever inducements she received for the execution, whatever threats or promises were made to her, they would have no right to challenge the deed, they would not be interested in having the deed set aside, they would have absolutely no right to take part in the litigation. This would be a matter concerning herself alone. If she had been wronged, she and she alone could bring an action to right that wrong, and beyond question they would be improper parties to such an action. If successful, they would gain nothing; if unsuccessful, they would lose nothing. The same may be said in reference to each of the other deeds. The grantors therein would be the only parties interested in having those deeds set aside. It is not enough under the section quoted that all the plaintiffs should have an interest in the subject of the action; it is essential that they should all have an interest in obtaining the relief demanded. But only the grantor in each deed is interested in obtaining the cancellation of that deed. As each grantor is alone interested in obtaining the cancellation of his own deed, and as

all the other plaintiffs would be improper parties in an action brought by the one alone to set aside his individual deed, so where all the parties unite in an action to have set aside six several deeds by separate grantors conveying separate interests, they unite six several causes of action in one suit, and six several causes of action in each of which only a portion of the plaintiffs is interested.

This does not assimilate an action in which the possession of the land owned in common is disturbed, for there each of the owners is alike interested in the possession. Jointly interested in the possession, they may jointly sue for any disturbance of their possession. But while jointly interested in the possession, they are not jointly interested in the title. Each owns his title separate and apart from the other — owns it absolutely and alone. The fact that they take by inheritance from a common ancestor, in no manner unifies their title. They hold by the same complete, separate and independent title as though each had purchased his interest from a different party. Nor does the case assimilate that in which by a single instrument, as a tax or other deed, a cloud is cast upon the title to the entire tract, or one in which owners of different tracts unite in a single action to abate a common nuisance. In such cases there may be said to be a unity of action, a unity in the relief demanded; either the single cloud is to be removed from the title, or the common nuisance is to be abated. But here each party's title is affected by a separate deed executed at a different time and place, and purporting to convey only his own separate interest, and the sole relief he can obtain is the cancellation of his own deed.

Again, it is not true that there was but a single contract or agreement in reference to the transfer of this land. The petition alleges that under threats, duress, etc., as above stated, the widow made her deed, and that under *like threats*, duress, etc., and for the sake of saving some small pittance, if they could, for their mother, the other adult plaintiffs made their deeds. So that there is in fact no unity either in the cause of action or in the relief demanded. In 1 Daniell's Chancery,

395, the author says: "Thus, if an estate is sold in lots to different purchasers, the purchasers cannot join in exhibiting one bill against the vendor for a specific performance; for each party's case would be distinct, and there must be a distinct bill on each contract. *Hudson v. Madison,* 12 Sim. 416; Coop. Eq. Pl. 182; Story Eq. Pl. 272, and notes." If separate vendees cannot unite in a single bill against a common vendor, neither can separate vendors unite in a single bill against a common vendee. See further the following authorities from this court: *Harsh v. Morgan,* 1 Kas. 293; *Winfield Town Co. v. Maris,* 11 Kas. 147; *Hudson v. Comm'rs Atchison County,* 12 Kas. 147; *Swenson v. Plow Co.,* 14 Kas. 388. Also the cases of *Bort v. Yaw,* 46 Iowa, 323, and *Tate v. Rld. Co.,* 10 Ind. 174, in which last case the court in the syllabus lays down the doctrine thus: "Two or more persons, having separate causes of action against the same defendant, though arising out of the *same* transaction, cannot unite; nor can several plaintiffs in one complaint demand several distinct matters of relief; nor can they enforce joint and separate demands against the same defendants."

We conclude, then, that upon this ground the ruling of the district court is correct, and must be affirmed.

We might stop here, but inasmuch as under § 292 of the code the court upon application of the plaintiffs must allow them to file separate petitions for the different causes of action, it is due to the parties that we should examine further, and determine whether the second ground of demurrer, namely, that the petition does not state facts enough to constitute a cause of action, is sustainable. Counsel for plaintiffs in error have filed an elaborate brief, citing many authorities upon the general proposition that a conveyance extorted by undue influences from a party in a dependent condition will always be set aside on application to a court of equity. Of this general doctrine there can be no doubt, and we shall concede its application in a general way to the case at bar. We shall not stop to inquire whether the allegations in the petition are sufficiently full in showing the circumstances of the duress, the nature of

the fraud, the exact false representations, the threats, or in explaining why the fraud was not discovered any sooner than it is alleged to have been discovered, because even if the allegations as they stand are sufficient as against a general demurrer, the court, on a motion to make them more specific and definite, would undoubtedly rule the plaintiffs to a fuller statement. But there are one or two matters to which we deem it necessary to call special attention. It appears from the allegations in the petition, that as part consideration for these conveyances, or some of them at least, the defendant caused to be executed and delivered to the widow a deed to a certain tract of forty acres. The only allegation in the petition in respect to that is, that the plaintiffs say they bring that deed into court for the defendant to do what he pleases with it. As this deed had once been delivered, and was not a deed from the defendants or either of them, the title to the land had thereby become vested in the widow; and merely tendering that deed to the defendants is not equivalent to a conveyance to them of the property. Now the rule is, that where parties seek to set aside a conveyance on the ground that it is fraudulent, they must return or offer to return all that they have received under it. A party who has received certain consideration, no matter how small and inadequate, for any contract or conveyance, must return that consideration or offer to return it before he is entitled to have the contract or conveyance set aside. He cannot, while retaining the benefits of a transaction, repudiate it as null and void; and plaintiffs in this case should tender a conveyance of the forty acres as a condition of recovery. See in support of this general doctrine the cases of *Tisdale v. Buckmore,* 33 Me. 461; *Bisbee v. Ham,* 47 Me. 543; *Evans v. Gale,* 17 N. H. 573; *Nichols v. Michael,* 23 N. Y. 264; *Cobb v. Hatfield,* 46 N. Y. 533; *McDonald v. Neilson,* 2 Cow. 139; *Ford v. Harrington,* 16 N. Y. 285; *Bainter v. Fults,* 15 Kas. 323.

. This doctrine also goes further in this case. A part of the consideration was the cancellation of these mortgages, and before a decree can be rendered setting aside those mortgages

it must appear that the defendants have received as profits for the use of the land the full amount of such mortgages, or else a restoration of the mortgages must be adjudged. In other words, where land subject to a mortgage has been conveyed to the mortgagee, the satisfaction of the mortgage being a part consideration of the conveyance, the conveyance will be set aside only on condition that the parties are restored to the position they occupied before the conveyance. He that seeks equity must do equity. Counsel for plaintiffs in error challenge this proposition in these words:

"That plaintiffs were not bound to make tender, is evident, first, from the fact that Forbes held no legally allowed, valid claim against the estate under the laws of Kansas; and second, because under the analogies of the law to say that Forbes is entitled to a tender for the amount of the two mortgages, or anything else, is a contradiction in terms. His title, being void, falls like an empty sack, because it has nothing to support it, and it cannot support itself. The proposition that one who is detected in such a transaction, by which he has acquired no title, shall nevertheless be placed on the footing of one who has a good title, unless the money he claims to have expended in the perpetration of this fraud be paid, or tendered, to him by those he has so grossly injured, shocks the ordinary sense of right as much as it violates the analogies of the law."

We cannot agree with these views in either respect. We know of no reason why heirs may not convey real estate they have inherited from their ancestor, in payment and discharge of a debt due from the estate, even though the same has never been allowed in the probate court. As between the heirs and the creditor receiving the conveyance, the transaction is valid and binding. Whether other creditors may intervene, and to what extent they may challenge such a conveyance, is not a question in this case. Neither is it true that the money that was due upon this mortgage was money paid in the perpetration or accomplishment of this fraud. There is nothing in the petition which shows that these mortgages were not just and valid claims in the hands of Forbes against the land. They were just debts, and ought to have been paid. The

fraud was not in securing the payment, but in securing an excessive amount of property therefor; and when the transaction is set aside it is set aside *in toto*, and the parties must be restored to their former condition. These are matters, however, to be more fully considered when the new petitions are filed. We make these suggestions in order that new petitions may guard against these defects, and be sufficiently full and specific to enable the parties to go to trial upon the real facts of the case.

Without going further into detail, and for the reasons heretofore given, the judgment must be affirmed.

All the Justices concurring.